## THE CURTIN.

### (District Court, E. D. Virginia. May 9, 1913.)

COLLISION (§ 95*)—STEAM VESSELS MEETING—FAILURE TO KEEP LOOKOUT.

 A collision in the Elizabeth river, off Norfolk, in the evening, between a tug passing down and a gasoline sloop coming in, *held*, on conflicting evidence, due solely to the fault of the tug in failing to keep a lookout; there being no one on deck but the wheelsman, who changed her course and brought about the collision.

 [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit by William S. Bensten, master of the gasoline sloop Cecilia, against the steam tug Curtin. Decree for libelant.

Hughes, Little & Seawell, of Norfolk, Va., for libelant.

Edward R. Baird, Jr., of Norfolk, Va., for respondent.

WADDILL, District Judge. On the evening of the 11th of December, 1911, at 5:45 o'clock a collision occurred in the waters of Elizabeth river, a little above Pinner's Point between the Cecilia, a gasoline sloop of 15.47 tons, 52.5 feet in length, 15 feet beam, 4 feet draft, and equipped with a 50 H. P. gasoline engine, whereof libelant was master, and the Curtin, a tugboat of 85 tons gross, 90 feet long, 20 feet beam, 8½ feet deep, engaged in coastwise and general towing, her home port being Philadelphia.

The Cecilia's case is briefly as follows: As she was proceeding up the Elizabeth river from Hampton Roads to Norfolk, just below the Merritt & Chapman Wrecking Company's property, a government dredge was anchored, with lines out extending in various directions, requiring the Cecilia to pass along the middle of the channel in order to clear the lines. After passing the dredge, the Cecilia shaped her course to pass close astern of the tug Pinner's Point and a barge in her tow, which were crossing the Elizabeth river from Pinner's Point towards Ft. Norfolk. As the Cecilia continued on to her destination, she observed the Curtin on the south side of the channel, showing her green light; that, as the Cecilia hauled around the stern of the Pinner's Point, the Curtin blew a signal of two whistles, apparently not to the Cecilia, and was thereafter observed to be turning towards the Cecilia under a port wheel. The Cecilia continued making for the

Atlantic City shore, thereby working away from the direction of the Curtin, when it was observed that the Curtin was coming around almost at right angles with her original course, and at a rapid rate of speed, heading directly for the Cecilia, showing only her green light, and never showing her red up to the time of the collision, running into the Cecilia at an angle of about 60 degrees, striking her just aft of amidships on her starboard side, inflicting the injuries sued for, and causing her to sink. The night was dark, but clear, flood tide, and little wind.

And the Curtin's case may briefly be thus stated: That she was proceeding down the river, about mid-channel, intending to go into dock at Pinner's Point, having a competent master and crew, and her lights properly set and burning; that her crew observed two launches below the docks, keeping to the westward and southward, heading upstream on courses which would take said vessels past the Curtin port to port. That the tug Pinner's Point was proceeding from the dock across the course of the Curtin, apparently bound to the northern and eastern side of the river, and as the vessels approached the Pinner's Point gave to the Curtin a signal of two whistles, to which the Curtin replied with a like signal, and put her wheel to starboard to shape her course around the stern of the tug and barge; that, just before rounding these vessels, the helm of the tug was ported, and steadied, for the purpose of keeping to starboard, and permitting the launches to proceed up the river, when the Cecilia suddenly changed her wheel, swinging to her port hand, throwing the launch across the course of the tug, and the collision occurred.

The case thus stated by each party presents the very unusual condition of the respective vessels, each navigating on a safe course as regards the other, deliberately and in violation of the plain rules of navigation changing their courses and running one into the other. The Supreme Court in Haney v. Baltimore Steam Packet Co., 23 How. 287, 16 L. Ed. 562, referring to defenses of this character, well said they are very improbable, and generally false. See, also, The Lauretta Speddin, 184 Fed. 283–285, 106 C. C. A. 425.

The evidence presented as to how the accident occurred is directly in conflict; but it may be said that, notwithstanding the improbability of the Curtin's navigating as it is claimed she did, by suddenly changing her wheel, and swinging to starboard across the course of and into collision with the launch, the libelant seems to have established that fact by the testimony of disinterested witnesses, seafaring people, who were in a position to see and observe just what occurred. The witnesses on the part of the Cecilia give positive testimony to that effect, as do officers from two tugboats coming out from Pinner's Point, and making across the river at the time of the collision, and in full view of the occurrence; and this evidence the court does not feel it should disregard especially in the light of the manifestly unreliable testimony of the single witness introduced in behalf of the Curtin, who was in a position actually to know what did occur. His statement cannot be accepted, as against the positive testimony of the libelant's witnesses mentioned; nor can that of the other two wit-

nesses called by the Curtin, who came on deck at the moment of the collision, as the accident manifestly did not happen as testified to by them. Two of the Curtin's witnesses place the Cecilia on the western as distinguished from the eastern side of the channel, which is disproved by all the evidence, as well as the circumstances of the case.

It is quite apparent from the Curtin's testimony that the real cause of the collision was brought about by the failure of that vessel to have a proper lookout or other competent person in charge of its navigation. According to their own statements, only the wheelsman was on duty, in a crowded harbor, and during the busiest time of a dark evening. The other members of the crew, some half dozen in number, including the master, were at supper, or off duty, and not in a position either to see or observe the movements of the vessels. While it is true that the Cecilia's navigation on the eastern side of the channel, instead of on the western side, where she should have been, was in this instance inexcusable, and not justified by its apparent desire to make a short cut to Smith's creek, her position on that side of the channel did not contribute to the cause of the disaster, the respondent even proving that she was not navigating on that side of the river; and hence she will not be held, as she otherwise would be, to share the loss of the collision.

The accident having been brought about solely as the result of the negligence of the Curtin, a decree will be entered so ascertaining.